IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACKSON ALEXANDER COSKO,<br><br>*Defendant.* | Case No. 1:18-CR-303 |

### UNITED STATES MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion for an Order detaining the defendant, Jackson Cosko, pending trial, pursuant to 18 U.S.C. §§ 3142(f)(1)(a), 3142 (f)(2)(A), and 3142(f)(2)(B).

The defendant was arrested after he broke into the office of United States Senator Maggie Hassan; used stolen login credentials to unlawfully access to a computer in Senator Hassan's office; attempted to keep a witness silent by threatening to release information belonging to a United States Senator and the children of a United States Senator; and "doxxed," or made public with criminal intent, personal information of United States Senator Mike Lee. Since the defendant's arrest, pursuant to a search warrant, United States Capitol Police officers recovered two handwritten notes from his apartment: one indicating that he planned further doxxing, and one indicating that he planned to destroy evidence (*i.e.*, to "burn aliases" and "wipe down comps").

The government respectfully submits that the defendant should be detained pending trial, pursuant to 18 U.S.C. §§ 3142(f)(1)(a), 3142 (f)(2)(A), and 3142(f)(2)(B). The defendant has been charged with a crime of violence; there is a serious risk of flight if the defendant is released; and there is a serious risk that, if the defendant is released, he will obstruct or attempt to obstruct justice.

1

Moreover, there is evidence that the defendant may possess, or have control over, as-yet unidentified information belonging to Members of the United States Congress – and that the defendant may use or unlawfully release that information. In the charged threat, the defendant asserted to one of Senator Hassan's staffers, "I own EVERYTHING," including "Emails[,] signal conversations[, and] gmails. Senators children's health information and socials." The defendant further asserted that, if the break-in were reported, he would "leak it all." The government submits that, without pretrial detention, no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community, including from the destruction of evidence or distribution of information belonging to Senator Hassan or other victims.

## Procedural Background

On October 3, 2018, the defendant was arrested and charged by complaint with violations of 18 U.S.C. § 119 (Making Public Restricted Personal Information); 18 U.S.C. § 1028(a)(7) (Identity Theft); 18 U.S.C. § 1030 (a)(3) (Computer Fraud); 18 U.S.C. § 875(d) (Threats in Interstate Communications); 18 U.S.C. § 1512(b)(3) (Witness Tampering); 22 D.C. Code §§ 801(b) (Second Degree Burglary); and 22 D.C. Code §3302(b) (Unlawful Entry). On October 5, 2018, a grand jury returned an indictment charging the defendant with those same violations. If the defendant were convicted on all counts, he would face a statutory maximum sentence of over 48 years in prison, including a minimum 2 years in prison for Second Degree Burglary.

At the defendant's initial appearance, the government orally moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(A), 18 U.S.C. § 3142(f)(2)(A), and 18 U.S.C. § 3142(f)(2)(B), because the defendant has been charged with a crime of violence (Second Degree Burglary), poses a serious

risk of flight, and poses a serious risk of obstruction of justice. The Court ordered that the defendant be temporarily detained until the detention hearing scheduled for October 9, 2018.

**Factual Proffer of the Evidence Supporting the Charges**

The defendant has been charged with publishing the restricted personal information of United States Senator Mike Lee on September 27, 2018, with the intent to threaten, intimidate, or incite the commission of a crime of violence against Senator Lee. As set forth in the affidavit supporting the criminal complaint, the publication, or "doxxing," of Senator Lee's personal information was committed during a series of doxxing posts against United States Senators who were participating in hearings concerning a nomination for the United States Supreme Court. See Exhibit 1 (Affidavit). The personal information of three Senators, including Senator Lee, was published on the website "Wikipedia.org," while the hearings were in process. Later, after a fourth Senator called for an investigation of that doxxing, the "Wikipedia" article for that Senator was edited on October 1, 2018, to include the fourth Senator's personal information, as well messages, "He dares call for an investigation of ME?!?!?!? . . . I am the Golden God! . . . We are malicious and hostile[.]" A few minutes later, the personal information of a fifth Senator was published on Wikipedia, using a computer with the same IP address as the "malicious and hostile" post.

The next day, on October 2, 2018, the defendant was caught in the act of burglarizing the office of United States Senator Maggie Hassan (his former employer) for the purpose of illegally accessing a computer in the Senator's office. When the defendant recognized that he was caught – by a staffer who knew the defendant well – he fled the office. However, only a few minutes later, the defendant sent a threatening e-mail to that same staffer. Specifically, the e-mail asserted that the defendant "own[ed] everything," including e-mails, encrypted communications, and the restricted, personal information of a Senator and the children of a Senator, and the e-mail

threatened, "If you tell anyone I will leak it all[.]"  The defendant's brazen attempt to silence this witness was unfortunately credible.  The defendant had been a system administrator in the Senator's office, and while he had been forced to resign several months prior, his system administrator role had provided him with broad access to electronic data in the Senator's office – and his unlawful actions that night showed that he was still capable of accessing both the Senator's office and her computers.

The defendant fled the Senate office complex at 10:21 p.m. on October 2, 2018.  He was arrested the following day, shortly before 11:30 a.m., after failing to report to work and falsely telling his employer that an unidentified family emergency would keep him from the office.

On that same day, the United States Capitol Police executed a search warrant at the defendant's residence.  During the search of the defendant's apartment, officers discovered evidence that the defendant may have spent the night after the confrontation at Senator Hassan's office using cocaine and making plans to consolidate and conceal some relevant evidence, and to destroy other evidence of his crimes.  Specifically, United States Capitol Police officers found, sitting openly on a counter in the defendant's apartment, a tray with a small pile of white powder that field-tested positive for cocaine, along with paraphernalia.  See Exhibit 2 (photograph).  The executing officers also found a handwritten, undated note.  Exhibit 3 (photograph).  It stated:

- Backup all files
- Mail backup
- Burn aliases
- Wipe down comps

Finally, officers found a crumpled note reflecting an undated intention to conduct additional doxxing – specifically, a "contest of who to dox next" (see Exhibit 4 (photograph)) – as well as an extensive collection of portable electronic storage devices, including devices used for encrypted data.  The contents of those devices is unknown at this time.  It is similarly unknown

4

what data defendant was planning to "backup" and "mail," whether the defendant had already backed up anything, whether the defendant had already mailed a backup to another location or person, and whether the defendant had already "burned" aliases or "wiped" computers.

### Principles Governing Requests for Detention

The Bail Reform Act, 18 U.S.C. § 3142, provides for pretrial detention where there is "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  See United States v. Simpkins, 826 F.2d 94, 96 (D.C.Cir.1987).  The Act provides for pretrial detention where the defendant is charged with a "crime of violence," 18 U.S.C. § 3142(f)(1)(A), where there is a "serious risk that [he] will flee," 18 U.S.C. § 3142(f)(2)(A), and where there is a "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten . . . or intimidate, or attempt to threaten . . . or intimidate, a prospective witness[,]" 18 U.S.C. § 3142(f)(2)(B).

The Act requires the Court to consider four factors in resolving a motion for pretrial detention: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

When community safety is the basis for detention, the government must prove the need for detention by clear and convincing evidence. United States v. Smith, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).  When "risk of flight" is the basis, the government must prove the need for detention by a preponderance of the evidence.  *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

## **The Factors Supporting Detention**

The government respectfully submits that each of the four Bail Reform Act factors weighs in favor of detention, and supports the government's contention that no condition or combination of conditions can reasonably assure the safety of the community and the defendant's appearance at trial, and that the defendant presents a serious risk of flight and of obstruction of justice.

### Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense weigh heavily in favor of detention.  The defendant faces significant jail time for serious offenses that posed a threat to the safety of the community and to the safety of United States Senators and staff.  The defendant has been charged with posting personal information with the intent to intimidate a Senator, with intent that was described in one of the posts as "malicious and hostile."  The publication of a Senator's home address in connection with highly publicized Senate hearings poses a danger to the Senator, the Senator's family, and the Senator's staff.  This is precisely why Congress criminalized "doxxing" conduct in 18 U.S.C. §119 – to protect Members of Congress, federal officers and judges after a series of tragic murders of persons in, and related to, the judiciary.  See "Court Security Act of 2007," Senate Report of Committee on the Judiciary, S.R. 110-42 at 2-3 (March 29, 2007).

Moreover, the defendant is not only charged with doxxing conduct over the internet, but the defendant also directly committed, physically and in person, a burglary at another United States Senator's office, where the defendant may well have been stealing information, preparing for additional doxxing posts, or using his unlawful access to a Senate computer for other criminal purposes.  The physical burglary itself was dangerous.  The defendant was fortunate to have been discovered by an unarmed staffer, rather than an armed individual or Capitol Police Officer.  Indeed, that risk – as well as the risk of forcible property damage – is precisely why burglary is

explicitly classified as "a crime of violence" under the D.C. Code, 23 D.C. Code § 1331(4), and as a "violent felony" under the U.S. Code. 18 U.S.C. § 924(e)(2)(B)(ii).[1] As then-Judge Breyer noted in United States v. Doe, 960 F.2d 221, 224-225 (1st Cir. 1992), "many states have [] statutes with language that defines terms such as "crime of violence" or "violent felony." See, e.g. . . . D.C. Code Ann. § 22-3201(f) (1981) . . . These definitions normally include crimes such as burglary[.]"

The defendant's extortionate threats to a witness are likewise serious. The threats, which were sent to the Senate staffer minutes after the confrontation in Senator Hassan's office, not only threatened to reveal very personal and private information related to a Senator's children, but also indicated that the defendant's offenses involved the theft of "everything," indicating that he possesses an extensive collection of documents and information belonging to the Senator or her staff. The investigation has not yet determined what, if any, documents or information the defendant actually stole from the Senator, whether he has already encrypted or concealed that information (*e.g.*, in remote or "cloud-based" storage), or whether he mailed it to some place or some third party. However, if the information resembles the description in the e-mail, its release would cause serious harm to the community – and its use or destruction would constitute obstruction of justice.

The severity of the defendant's conduct is likewise demonstrated by the response it required from the Capitol Police. In the last week, the risk created by these doxxing offenses required the Capitol Police to make additional security details available to victim Senators, their families, and staffers, as a result of the defendant's actions – and at significant costs to taxpayers.

---

[1] A "crime of violence" under the Bail Reform Act includes "any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B).

Finally, in considering the nature and circumstances of the offense, the Court should also weigh the penalty the defendant faces upon conviction. See United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990). As noted above, in this case the defendant faces over 48 years in prison.

## The Weight of the Evidence

The weight of the evidence against the defendant is substantial, and weighs heavily in favor of detention. The defendant was caught in the act burglarizing Senator Hassan's office by a witness who immediately recognized the defendant as a former co-worker who had been forced to resign. Similarly, as set forth in the affidavit (Exhibit 1), the doxxing post concerning Senator Lee was committed from a workstation that was accessed using the defendant's login credentials. The strength of the evidence on the charges against the defendant is further confirmed by the recovery of the notes and electronic evidence from the defendant's residence. That, especially when paired with the defendant's failure to return to work the day after the burglary – and the manufactured explanation to his former employer – reflects a significant consciousness of guilt.

## History and Characteristics of the Defendant

The defendant has a felony record, as described in the Pretrial Services Report. The government intends to provide additional information under seal, which the government believes demonstrates that the defendant's history and characteristics favor detention, indicate that the defendant is a flight risk and that he poses a danger to the safety any person and the community.

## The Nature and Seriousness of the Danger to Any Person or the Community

The nature and circumstances of the dangers posed by release also weigh heavily in favor of pretrial detention. The defendant is charged with crimes that have already harmed a significant number of people. His conduct evinces a privileged belief that he is above the law or beyond its reach. Indeed, even after the original doxxing, the defendant brazenly burglarized a Senator's

office, unlawfully accessed Senate computers, and then threatened a witness who caught him in the act. If that were not enough, even after the defendant had retreated to his home, he committed additional offenses in relation to drug possession, and he created that "to-do list" discussing his intention to secrete away additional electronic data, "burn aliases" and "wipe" computers.

The defendant committed serious crimes, attempted to obstruct justice with respect to those crimes, and then planned to commit additional serious crimes. There is evidence that the defendant may possess, or have access to, additional information belonging to Members of the United States Congress. The execution of those plans would likely constitute additional serious criminal offenses, and would obstruct the administration of justice in an ongoing criminal investigation. The government respectfully submits that, in this context, without pretrial detention, no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community, including from the destruction or criminal distribution of evidence or information belonging to Members of the Congress or other victims in this case.

## **Conclusion**

For all of the foregoing reasons, the government respectfully submits that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, including with respect to the integrity of the investigation and trial from further criminal conduct and obstruction of justice. The government therefore requests that the Court order that the defendant be detained pending trial.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By: _____/s/_____
Demian S. Ahn, DC Bar No. 49111
Tejpal S. Chawla, DC Bar No. 464012
Youli Lee, NY Bar No. 4064028
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530